**Supreme Court**

No. 2014-101-Appeal.
(PC 09-1165)

Willie Battle et al.                    :

v.                    :

State of Rhode Island.                    :


NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Willie Battle et al.            :

v.            :

State of Rhode Island.            :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.**    This case came before the Supreme Court on

October 1, 2015, pursuant to an order directing the parties to appear and show cause why the

issues raised in this appeal should not be summarily decided.   The plaintiff, Willie Battle

(plaintiff), appeals from the trial justice's denial of his motion for a new trial,[1] following a jury

verdict in favor of the defendant, the State of Rhode Island (state).   After hearing the arguments

of counsel and reviewing the memoranda submitted by the parties, we conclude that cause has

not been shown and proceed to decide this appeal.   For the reasons set forth in this opinion, we

affirm the judgment of the Superior Court.

**Facts and Travel**

This action arises from injuries plaintiff suffered as a result of a fall while he was

incarcerated at the Adult Correctional Institutions (ACI).   On February 14, 2007, plaintiff and

---

[1] The plaintiff also challenges the denial of his motion for an additur following the jury verdict. However, we decline to address this issue.  It is of no moment in this case because the jury returned a verdict for defendant on liability and plaintiff has not sufficiently developed this issue on appeal.  See Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure ("Errors not claimed, questions not raised and points not made [in the appellant's brief] ordinarily will be treated as waived and not be considered by the Court.").

approximately 150 of his fellow inmates were conducted on foot as part of a routine "movement" of inmates from the cellblocks to the ACI's medium-security education facility. There, plaintiff had been scheduled to attend morning classes as part of a six-month rehabilitative program for inmates. That morning, however, plaintiff slipped and fell as he entered the building. The plaintiff seriously injured his back in the fall, which eventually required surgery. The plaintiff, who has since been released from the ACI, now walks with a limp and reports continuing discomfort. He filed a complaint in Providence County Superior Court on February 26, 2009, alleging negligence by the state in failing to reasonably maintain the premises.[2] The negligence action proceeded to trial on May 22, 2013.

The first two witnesses called by plaintiff to testify were David Melikian (Officer Melikian) and Roger Boccanfuso (Officer Boccanfuso), corrections officers who had seen plaintiff fall. Both recalled that there was inclement weather that morning; Officer Boccanfuso specifically remembered "severe downpours." Both witnesses testified that inmate porters mop the floors near the building's entrance to keep the area dry when it rains or snows. Both testified that, on such days, they or fellow ACI guards would caution inmates that the floors might be wet as they entered the building. Each witness testified that inmate porters would place "wet floor" signs in the area and that one or two large mats covered the floor at all times.

Next, plaintiff called Archangel Barboza (Ms. Barboza) to testify. Ms. Barboza stated that she works as a teacher for the Department of Corrections in the building where plaintiff fell. She recalled that she had slipped and injured her leg by the building's entrance on a rainy day in 2006. She also said that, on or around the day plaintiff fell, she had slipped but avoided injury in an area near where plaintiff fell.

---

[2] The complaint named a co-plaintiff whose claim for loss of consortium was later dismissed by agreement of the parties.

The plaintiff also testified at trial. Recounting the moments leading up to the incident, he stated that it had been raining that morning and that newly fallen snow was melting on the ground. He told the jury, "[A]s we [were] going to the building, I didn't think nothing of it * * *. I was just doing what I normally do, * * * and * * * when I got in the building, I didn't think nothing." The plaintiff stated that an object similar to a mat had been on the floor to wipe his feet on, but he insisted the object was not a mat. He did not recall hearing any warnings about wet floors from the corrections officers as he entered the building, yet he conceded on cross-examination that officers may have cautioned inmates on other rainy days. Similarly, plaintiff testified that he had not seen inmate porters cleaning the area prior to his fall, but he admitted on cross-examination that they might have been present.

The plaintiff rested, and the state did not present any witnesses. The plaintiff then moved for judgment as a matter of law, which the trial justice denied. On May 24, 2013, following deliberations, the jury found that the state was not negligent.

On May 31, 2013, plaintiff moved for the Superior Court to "vacate the jury verdict * * * and * * * grant a new trial and/or additur to the Plaintiff." In support of the motions, plaintiff argued for the first time that, "not only was this a case of simply negligence and egregious conduct, it [was] also a case to be considered for strict liability." The plaintiff contended that the state should be held strictly liable for his injuries because it had been engaging in an abnormally dangerous activity at the time plaintiff fell. According to plaintiff, the state engaged in such activity by forcing inmates to walk in a potentially slippery area that could not be made safer even with a floor mat, "wet floor" signs, continuous cleanup, or verbal warnings. The trial justice denied plaintiff's motion, rejected plaintiff's theory of strict liability, and concluded that

the jury acted reasonably in finding for the state on the negligence count. The plaintiff filed a timely notice of appeal.

## Standard of Review

"A trial justice's role in considering a motion for a new trial is that of a superjuror, who must weigh the evidence and assess the credibility of the witnesses." Gomes v. Rosario, 79 A.3d 1262, 1265 (R.I. 2013) (quoting McGarry v. Pielech, 47 A.3d 271, 280 (R.I. 2012)). In doing so,

> "[t]he trial justice must consider, in the exercise of his [or her] independent judgment, all the material evidence in the case, in the light of his [or her] charge to the jury and pass on its weight and the credibility of the witnesses, determine what evidence is believable, and, decide whether the verdict rendered by the jury responds to the evidence presented and does justice between the parties." Id. (quoting McGarry, 47 A.3d at 280).

This Court will not disturb the trial justice's decision absent a showing that he or she "overlooked or misconceived material and relevant evidence or was otherwise clearly wrong." Id. (quoting McGarry, 47 A.3d at 280).

## Discussion

### A. Motion for a New Trial

In support of plaintiff's motion for a new trial, counsel argued in the Superior Court, and before this Court on appeal, that plaintiff had been part of a "forced march" in which guards rushed him and his fellow inmates from the cellblocks to the education facility without regard for their personal safety. He further argued that the jury had been biased against plaintiff because he had been incarcerated at the time of his injury.

Deciding plaintiff's motion from the bench, the trial justice recounted the evidence introduced at trial and weighed the credibility of the witnesses. He noted the testimony regarding the placement of both mats and "wet floor" signs by the door, the verbal warnings

routinely issued by guards as the inmates entered the building, and the assignment of inmate porters to mop the floors. The trial justice found Officers Melikian and Boccanfuso to be highly credible, cogent witnesses and found that their testimony was consistent. He found Ms. Barboza, the teacher who previously had slipped, to be credible as well, but he noted that the site of her accident was at least ten to fifteen feet away from where plaintiff had fallen. The trial justice also found plaintiff to be "consistent" in his testimony and "an extremely nice man," but he stated that the case hinged on the issue of liability rather than plaintiff's credibility. The trial justice further rejected the contention that plaintiff had been subjected to a "forced march" and observed that the description distorted reality and was "unfair." He observed that the guards were merely transporting the inmates on foot from one building to another and that the inmates were not at gunpoint. The trial justice concluded that he agreed with the jury verdict and did not find that the state was negligent.

We conclude that the trial justice had a sufficient basis to find that the jury acted reasonably in rendering its verdict for the state. This Court previously has noted that, "[w]hen the trial justice has reviewed the evidence, in light of his charge to the jury, and concludes that he or she agrees with the verdict, the analysis is at its end." Dawkins v. Siwicki, 22 A.3d 1142, 1159 (R.I. 2011). Accordingly, we need not venture further.

We pause to note that, after thoroughly reviewing the trial record, we are satisfied that the evidence introduced at trial does not substantiate the allegation that the transfer of inmates from the cellblocks to the education facility approached nefarious conduct. No testimony provided at trial, including that of plaintiff, suggests that any inmate was compelled by a guard to parade against his will from one location to another, nor does the evidence imply that the so-called

- 5 -

"forced march" was anything more than a routine movement of inmates within the institution. This claim simply lacks foundation.

## B. Strict Liability

The plaintiff also cites to the Restatement (Second) <u>Torts</u> § 520 (1976) regarding abnormally dangerous activities[3] and suggests that the state should be held strictly liable for his injuries under this standard. However, our careful reading of the record in this case discloses that plaintiff raised the issue of strict liability for the first time only after the jury rendered its verdict. For this reason, the argument is barred by this Court's well-established raise-or-waive rule.[4] <u>See</u> <u>State v. Ciresi</u>, 45 A.3d 1201, 1212 (R.I. 2012) (litigant may not "argu[e] an issue on appeal that has not been articulated at trial", quoting <u>State v. Brown</u>, 9 A.3d 1240, 1245 (R.I. 2010)).

---

[3] Section 520 of the Restatement (Second) <u>Torts</u> (1976) enumerates six factors for courts to consider when determining whether an activity is abnormally dangerous and thus whether those who engage in it should be subjected to strict liability:

> "(a) existence of high degree of risk of some harm to the person, land or chattels of others;
> "(b) likelihood that the harm that results from it will be great;
> "(c) inability to eliminate the risk by the exercise of reasonable care;
> "(d) extent to which the activity is not a matter of common usage;
> "(e) inappropriateness of the activity to the place where it is carried on; and
> "(f) extent to which its value to the community is outweighed by its dangerous attributes." <u>Splendorio v. Bilray Demolition Co.</u>, 682 A.2d 461, 466 (R.I. 1996) (adopting and quoting § 520 of the Restatement).

[4] However, even if the issue were properly before this Court, plaintiff's argument lacks merit and his reliance on § 520 of the Restatement is misplaced. The examples of abnormally dangerous activities cited in the comments to § 520 include the use of atomic energy, the storage of explosives, a traction engine on a public highway, and blasting and oil drilling in well-populated residential areas. The activities recognized as abnormally dangerous in the Restatement clearly dwell in a different dimension than the commonplace activity of pedestrians tracking water into a building on a rainy day.

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court.  The record shall be remanded to the Superior Court.



# RHODE ISLAND SUPREME COURT CLERK'S OFFICE

## *Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**    Willie Battle et al. v. State of Rhode Island.

**CASE NO:**    No. 2014-101-Appeal.
(PC 09-1165)

**COURT:**    Supreme Court

**DATE OPINION FILED:**  October 19, 2015

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**    Associate Justice Maureen McKenna Goldberg

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Jeffery A. Lanphear

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Ronald J. Resmini, Esq.

For Defendant:  Thomas A. Palombo
           Department of Attorney General